UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HEFTZIBA MANDELL,<br>    Plaintiff,<br><br>v.<br><br>DONNA DOLLOFF, individually and as Executrix of the Estate of BARBARA GOYETTE, deceased; RAYMOND GOYETTE; THE ESTATE OF BARABRA U. GOYETTE; JOHN DOES #1-100, and JOHN DOE #102, Deceased, the true names of same being unknown to Plaintiff,<br>    Defendants. | No. 3:17-CV-01282-MPS |

**RULING ON MOTIONS TO DISMISS**

### I.    Introduction

Plaintiff Heftziba Mandell filed this action against Defendants Donna Dollof, individually and as executrix of the estate of Barbara Goyette, Raymond Goyette,[1] the Estate of Barbara Goyette ("the Estate"), and John Does (collectively, "Defendants"), claiming that Defendants Dollof and Goyette breached a contract ("the Contract") they entered into with Mandell for the purchase of real property in East Windsor, Connecticut ("the Property"), by authorizing the sale of that property to a John Doe defendant. (*See* Revised Complaint, ECF No. 2.) Mandell seeks specific performance of the Contract (Count One), a declaratory judgment that the Contract is superior to and bars any rights under any subsequent contract with the John Doe defendant (Count Two), damages for tortious interference with the Contract (Count Three), and a constructive trust over the Property (Count Four). (*Id.*)

---

[1] Raymond Goyette has since been terminated as a defendant in this action. (ECF No. 25.)

1

Defendants and Intervenor-Defendant 93 Prospect Hill Road, LLC ("Intervenor"), the current owner of the Property, moved to dismiss this action on the grounds that the Court lacks subject-matter jurisdiction under the probate exception to diversity jurisdiction, or, alternatively, that the doctrine of res judicata warrants dismissal. (ECF Nos. 15 and 16.) For the following reasons, Defendants' Motion to Dismiss is GRANTED as to Counts One, Two, and Four and DENIED as to Count Three.

## II.     Background

Before she passed away, Barbara Goyette owned the Property located at 93 Prospect Hill Road, in East Windsor, Connecticut. (ECF No. 2 ¶ 5, ECF No. 15-3, ECF No. 15-5.) Ms. Goyette died on March 20, 2006, and Dollof was appointed the executrix of her estate. (*Id.* ¶ 5, ECF No. 15-3.) The Estate filed an application for probate of Ms. Goyette's will in Probate Court for the Greater Windsor District on June 21, 2012. (ECF No. 15-3.) Ms. Goyette's Last Will and Testament was admitted by the Probate Court on July 24, 2014, and the Probate Court determined that Dollof was the sole beneficiary of the Estate under Ms. Goyette's will. (ECF No. 15-5.)

In April, 2017, the Property was the subject of a foreclosure action by the Town of East Windsor and notice of an impending foreclosure sale was published. (ECF No. 2 ¶ 8.)[2] Mandell made an offer to Dollof and Raymond Goyette to buy the Property for $75,000. (*Id.* ¶ 10.) Dollof and Mr. Goyette accepted the offer and on April 28, 2017, the parties executed the Contract for the purchase and sale of the Property. (*Id.* ¶¶ 10–12.) Under the Contract, Dollof and Mr. Goyette agreed to deliver marketable title to the Property at closing. (*Id.* ¶ 12.)

---

[2] The Court takes judicial notice of both the foreclosure proceedings in Superior Court, *Town of East Windsor v. Donna Dolloff et al.*, No. HHD-CV12-6034179-S (Hartford Superior Ct.), and the proceedings in Probate Court, *In re Barbara U. Goyette*, No. PD0412-00318 (Greater Windsor Probate Ct.).

As a result of the execution of the Contract, counsel for Dollof and Mr. Goyette, Derek Donnelly, Esq., requested in Connecticut Superior Court a stay of the foreclosure sale, which was scheduled to take place the next day, April 29, 2017. (*Id*. ¶ 15.) The Superior Court granted the request and canceled the foreclosure sale. (*Id*. ¶ 15.) Mr. Donnelly told Mandell, through her attorney, that the foreclosure sale was canceled and that he would be in touch with her regarding the sale of the Property to Mandell. (*Id*. ¶ 17.)

Mandell ordered a title report for the Property, but in June 2017, Mr. Donnelly told Mandell that a "title issue ha[d] come up that [would] require the delay of the purchase at least a week." (*Id*. ¶ 20.) A week later, Mr. Donnelly told Mandell that the parties had "run into issues with the closing" because "there was a title issue involving the deed" to Dollof and Mr. Goyette, and that title remained vested in the Estate. (*Id*. ¶ 21.) Mr. Donnelly then told Mandell that she would have to pay additional charges on the Property, which she agreed to do. (*Id*. ¶¶ 23-24.) Still, Mr. Donnelly later informed Mandell that he was "having some difficulty" arranging the closing. (*Id*. ¶ 25.) In July 2017, Mr. Donnelly informed Mandell that the "file" for the sale of the Property was transferred to Robert Curzan, an attorney for the Estate. (*Id*. ¶ 26.) After further inquiry by her attorney, Mandell learned that the Property was in the process of being sold by the Estate to another buyer. (*Id*. ¶ 27.)

On July 17, 2017, Dollof and Frank Fitzgerald entered into a contract for the purchase and sale of the Property for $250,000, and the Estate filed an application in Probate Court for permission to sell the Property to Fitzgerald. (ECF No. 15-6.) The law firm Wiggin and Dana, LLP ("Wiggin and Dana") made a second offer to purchase the Property for $275,000. (ECF No. 15-8.) Mandell filed this action in federal court on July 31, 2017. (ECF No. 1.)

During a hearing in Probate Court on August 17, 2017, both Fitzgerald and Wiggin and Dana notified the court of their intentions to submit higher bids for the Property. (ECF No. 15 at 4.) The Probate Court also acknowledged receipt of a *lis pendens* providing notice that the Property was the subject of this lawsuit. (*Id*. at 5.) After the hearing, both Fitzgerald and Wiggin and Dana submitted higher bids for the Property. (*Id.*) The Probate Court subsequently found on August 22, 2017, that it was in the best interest of the Estate to sell the property to Wiggin and Dana or its nominee for $555,000 and granted the Estate's application to do so. (ECF No. 15-10.) As a result of the Probate Court's order, title to the Property transferred to 93 Prospect Hill Road, LLC at closing on August 29, 2017. (ECF No. 15-11.) There is no indication in the probate court documents attached to the parties' filings that the plaintiff participated in the proceedings in the Probate Court.

Invoking diversity jurisdiction, the operative complaint alleges that Mandell is a citizen of New Jersey, Defendants Dollof and Goyette are citizens of Connecticut, and the John Doe defendants are citizens of states other than New Jersey. (ECF No. 2 ¶ 1.)

### III. Legal Standard

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks omitted). The party "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201

F.3d 110, 113 (2d Cir. 2000). The court construes the complaint liberally and accepts all factual allegations as true. *Ford v. D.C. 37 Union Local 1549,* 579 F.3d 187, 188 (2d Cir. 2009).

## IV. Discussion

### A. The Probate Exception to Diversity Jurisdiction

"The 'probate exception' is an historical aspect of federal jurisdiction that holds 'probate matters' are excepted from the scope of federal diversity jurisdiction." *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 105 (2d Cir. 2007). "[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from disposing of property that is in the custody of a state probate court." *Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006). It does not, however, "bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id.* at 312.

Acknowledging the Supreme Court's narrowing of the exception in *Marshall*, the Second Circuit has held that "as long as a plaintiff is not seeking to have the federal court administer a probate matter or exercise control over a *res* in the custody of a state court, if jurisdiction otherwise lies, then the federal court may, indeed must, exercise it." *Lefkowitz*, 528 F.3d at 106. Thus, "where exercise of federal jurisdiction will result in a judgment that does not dispose of property in the custody of a state probate court, even though the judgment may be intertwined with and binding on those state proceedings, the federal courts retain their jurisdiction." *Id*. The probate exception "can no longer be used to dismiss widely recognized torts . . . merely because the issues intertwine with claims proceeding in state court." *Id*. at 108. Using this framework, the Second Circuit held in *Lefkowitz* that the district court lacked jurisdiction over plaintiff's claims that sought, "in essence, disgorgement of funds that remain[ed] under the control of the Probate Court," *id*. at 107, but maintained jurisdiction over *in personam* tort claims that sought "damages from

5

[d]efendants personally rather than assets or distributions from each estate." *Id*. at 107-08. Determining whether the probate exception applies, then, requires an examination of the nature of each claim asserted by the plaintiff, including the relief sought.

1. **Breach of Contract, Declaratory Judgment, and Constructive Trust (Counts One, Two, and Four)**

In Counts One, Two, and Four, Mandell seeks specific performance of the Contract, requiring Defendants to convey the Property to her; a judgment declaring the Contract superior to and "barring the rights" of John Doe, i.e., the subsequent purchaser of the Property (ECF No. 2 ¶ 45); and a constructive trust over the Property for her benefit. Each of these claims would require this Court to exercise control over property within the custody of the Probate Court when this action was filed, and thus, each falls outside this Court's jurisdiction.

As discussed above, the Estate filed an application to admit Ms. Goyette's will to probate on June 12, 2012, and Ms. Goyette's Last Will and Testament was admitted by the Probate Court on July 24, 2014. (ECF Nos. 15-3, 15-5.) The parties have not indicated, however, when or whether a final accounting or Affidavit of Closing[3] was filed in Probate Court, or whether the Estate had otherwise closed before the Probate Court received on July 17, 2017, an application for permission to sell the Property to Fitzgerald, and this information does not appear on the website of the Connecticut Probate Courts. (ECF No. 15-6.) Under Connecticut law, the Probate Court maintained extensive supervisory authority over the Estate's property throughout the probate period. *See, e.g.*, Conn. Gen. Stat. § 45a-98 (listing powers of probate court, including the power to "determine title or rights of possession and use in and to any real . . . property that constitutes .

---

[3] *See* Connecticut Probate Court Rule Sec. 36.12 (providing that "[i]f the court directs the fiduciary to file an affidavit of closing, the fiduciary shall file the affidavit . . . not later than 30 days after completing distribution of all assets on hand").

6

. . . all or part of . . . any decedent's estate"); § 45a-175(a) (probate court's jurisdiction over the interim and final accounts of executors); § 45a-179 (procedures for notice and hearing on final accounts); § 45a-431 (probate court's power to order fiduciary to distribute estate). But the Court need not decide whether the Property remained in the custody of the Probate Court, uninterrupted, since 2012, because it is clear that the Probate Court had control over the Property as of July 17, 2017—at the latest—when the Estate sought permission from the Probate Court to sell the Property.

Mandell filed this action on July 31, 2017, while the proceedings in Probate Court were ongoing, before the Probate Court disposed of the Property on August 22, 2017, and before title transferred from the Estate to Intervenor on August 29, 2017. The Property was therefore within the custody of the Probate Court when Mandell filed this action, the relevant moment in time for determining whether the Court has subject-matter jurisdiction. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 571 (2004) (the "time-of-filing rule . . . . measures all challenges to subject-jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing"); *Mercer v. Bank of N.Y. Mellon, N.A.*, 609 Fed. Appx. 677, 679 (2d Cir. 2015) (assuming that a probate-exception challenge must be measured against the state of facts that existed at the time of filing, and concluding that the probate exception barred federal jurisdiction because the New York Surrogate's Court "had supervisory control of the administration" of a trust before the plaintiff brought the action); *see also Chevalier v. Estate of Barnhart*, 803 F.3d 789, 804 (6th Cir. 2015) ("[W]e now hold that the probate exception does not divest a federal court of subject-matter jurisdiction unless a probate court is already exercising *in rem* jurisdiction over the property at the time that the plaintiff files her complaint in federal court."). As in *Mercer*, this suit asks the Court to exercise control of property that was already under the supervisory power of the

Probate Court—including the power to order the sale of the Property—at the time Mandell filed suit on July 31, 2017. It is thus immaterial whether the Property remains in the custody of the Probate Court now; the existence of jurisdiction does not turn on when this Court makes a decision about whether it has jurisdiction.

The relief that Mandell seeks under Counts One, Two, and Four—specific performance, a declaratory judgment, and a constructive trust—would require the Court "to assert control over property that [was] in the custody of a state probate court" at the relevant time. *Lefkowitz*, 528 F.3d at 107 (declining jurisdiction under the probate exception for *in rem* specific performance and declaratory judgment claims concerning estate property); *see also Mercer*, 609 Fed. Appx. at 679-80 (noting that while plaintiffs styled their claims as *in personam* claims, including for breach of contract, the Court was required to "examine the substance of the relief that Plaintiffs are seeking, and not the labels they have used," and finding that the probate exception applied because the plaintiffs asked the district court to restore funds to a trust that the trustees distributed during the period of probate administration); *U.S. Specialty Ins. Co. v. A-Val Architectural Metal Corp.*, No. 15-CV-760 (KBF), 2015 WL 3948115, at *5 (S.D.N.Y. June 29, 2015) (holding that under the probate exception, the court lacked jurisdiction to "order the . . . [e]state to perform its obligations with respect to" property that belonged to the estate and was then part of the *res* in the custody of the Surrogate's Court, where proceedings were ongoing).

This is plain with respect to the claims for specific performance and constructive trust—both of which would have this Court "dispose of property that is in the custody of a state probate court," *Marshall*, 547 U.S. at 312, by ordering the conveyance of the Property from Defendant Dollof to the plaintiff and by imposing a trust on the current owner of the Property in favor of the plaintiff. It is also true of the plaintiff's claim for declaratory judgment, which asks the Court to

"declar[e] the Contract superior to and barring the rights of [the subsequent purchaser] under the Second Contract." (ECF No. 2 at 11.) To be sure, a federal court may "exercise its jurisdiction to adjudicate rights in [property in the custody of a state court] where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court," *Marshall*, 547 U.S. at 310 (quoting *Markham v. Allen*, 326 U.S. 490, 494 (1946)). But a declaration that the plaintiff's Contract with Dollof, which was consummated outside of Probate Court, "barred the rights" of the purchaser of real property of an estate acquired in a transaction vetted and approved by the Probate Court would "interfere with the state court's possession" well beyond simply clarifying ownership; indeed, it would moot the entire Probate Court proceeding and nullify the Probate Court's exercise of control over the Property altogether by declaring that the Property was to be conveyed outside the probate process. "In other words, Plaintiff[] [is] not simply seeking an adjudication of [her] own entitlement to [the Property]; . . . [she is] asking the District Court to undo specific actions already taken by [the Executor, under supervision of the Probate Court] during the period of probate administration that Plaintiff[] disagree[s] with. Such claims . . . cannot be maintained if another court is already exercising control over" the Property. *Mercer*, 609 Fed Appx. at 680. While framed as seeking declaratory relief, the plaintiff's request for an order declaring her Contract "superior to" and "barring the rights" of the subsequent purchaser of the property is virtually indistinguishable from a request for an injunction requiring the subsequent purchaser to convey the Property to the plaintiff—which would plainly fall outside this Court's jurisdiction. *U.S. Specialty Ins. Co.*, 2015 WL 3948115, at *5 ("Under the probate exception, this Court does not have jurisdiction . . . to issue any injunction governing funds or property in the possession of the . . . Estate.").

The Court's exercise of federal jurisdiction over Counts One, Two, and Four contravenes the probate exception's rationale that "no two courts may exercise simultaneous jurisdiction over the same res." *Lefkowitz*, 528 F.3d at 107 (*citing Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939)).[4] The probate exception therefore applies to Mandell's claims for breach of contract, declaratory judgment, and constructive trust, because exercising jurisdiction over these claims and providing the relief Mandell seeks would lead this Court to dispose of property that was under the control of the probate court when this case was filed.

### 2. Tortious Interference (Count Three)

In Count Three, Mandell seeks damages from the Doe Defendants personally as a result of their alleged tortious interference with the Contract. As an *in personam* tort claim for money damages, Count Three does not implicate the Property or any other assets of the Estate in the custody of the Probate Court at the time the complaint was filed. Thus, it does not implicate the probate exception. *See Marshall v. Marshall*, 547 U.S. 293 (2006) (holding that a counterclaim for tortious interference fell outside the probate exception); *see also Lefkowitz*, 528 F.3d at 107-08 (holding that the probate exception did not apply to *in personam* tort claims for damages for breach of fiduciary duty, fraudulent misrepresentation, and fraudulent concealment); *Lyle v. James*, No. 3:12-CV-00959 (VLB), 2014 WL 2881405 (D. Conn. Jun. 25, 2014) (holding that the probate

---

[4] That the Property was subject to foreclosure in Superior Court during the probate period does not implicate the concerns for simultaneous jurisdiction over a *res* discussed in *Lefkowitz*, as Connecticut law provides that the Probate Court's jurisdiction does not affect the general jurisdiction of the Superior Court, and as the probate exception limits federal diversity jurisdiction in particular. *See* Conn. Gen. Stat. § 45a-98(b) ("The jurisdiction of Probate Courts to determine title or rights . . . is concurrent with the jurisdiction of the Superior Court and does not affect the power of the Superior Court as a court of general jurisdiction."). In any event, the fact that a second state court might have had custody of the Property when this lawsuit was filed does not help the plaintiff's argument that this Court may exercise *in rem* jurisdiction over the Property.

exception did not bar a claim for unjust enrichment against beneficiaries of an estate). Although potentially factually intertwined with the history of the proceedings in Probate Court, Count Three does not seek to have the Court administer an estate or dispose of property within the custody of the probate court. Therefore, the probate exception does not prevent the Court from exercising jurisdiction over Mandell's tortious interference claim. Similarly, the probate exception would not prevent Mandell from seeking leave to amend the complaint to add other plausible *in personam* claims against any of the Defendants if she wishes.

### B. Res Judicata

Because I find that the probate exception prohibits the Court from exercising jurisdiction over Counts One, Two, and Four, I need consider whether the doctrine of res judicata precludes Mandell from asserting only Count Three.

Preclusion of a claim under the doctrine of res judicata requires a showing that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015). The defense of res judicata may be raised on a Rule 12(b)(6) motion to dismiss "if all relevant facts are shown by the court's own records." *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d. Cir. 2003).

Res judicata does not preclude Mandell from asserting a claim for tortious interference against the Doe Defendants in this action. Though Mandell filed a *lis pendens* notifying the Probate Court of these proceedings, Mandell was not a party to the probate proceedings and did not have an opportunity to litigate whether the Doe Defendants tortiously interfered with her purchase of

11

the Property.[5] The Probate Court never adjudicated on the merits Mandell's tortious interference claim. Thus, I find that res judicata does not require dismissal of Count Three.

V.   **Conclusion**

For the reasons discussed above, the Motions to Dismiss are GRANTED as to Counts One, Two, and Four and DENIED as to Count Three. Because Mandell brings Count Three against the Doe Defendants only, the case may proceed against those defendants only. The claims against Defendants Donna Dollof and the Estate of Barbara Goyette are DISMISSED. By no later than **August 14, 2018,** Mandell may, however, seek leave to amend the complaint to identify the Doe Defendants and to bring additional *in personam* claims for money damages for which the probate exception would not bar federal jurisdiction.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         July 24, 2018

---

[5] Indeed, given the limited jurisdiction of the Connecticut Probate Courts, it is doubtful that Mandell could have litigated her tortious interference claim in the probate proceeding. *See Bender v. Bender*, 292 Conn. 696 (2009).