UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HEFTZIBA MANDELL,<br>    Plaintiff,<br><br>v.<br><br>DONNA DOLLOFF, individually and as Executrix of the Estate of BARBARA GOYETTE, deceased; RAYMOND GOYETTE; THE ESTATE OF BARABRA U. GOYETTE; JOHN DOES #1-100, and JOHN DOE #102, Deceased, the true names of same being unknown to Plaintiff,<br>    Defendants. | No. 3:17-CV-01282-MPS |

**RULING ON MOTION FOR RECONSIDERATION**

**I.    Introduction**

Plaintiff Heftziba Mandell filed this action against Defendants Donna Dollof, individually and as executrix of the estate of Barbara Goyette, Raymond Goyette,[1] the Estate of Barbara Goyette ("the Estate"), and John Does (collectively, "Defendants"), claiming that Defendants Dollof and Goyette breached a contract they entered into with Mandell for the purchase of real property in East Windsor, Connecticut ("the Property"), by authorizing the sale of that property to a John Doe defendant. (*See* Revised Complaint, ECF No. 2.)

On July 24, 2018, I granted in part and denied in part Defendants' motions to dismiss the complaint. I held that the probate exception to federal diversity jurisdiction barred the Court from adjudicating Plaintiff's *in rem* claims for specific performance of a contract, declaratory judgment, and constructive trust, but that it did not bar the Court from adjudicating Plaintiff's *in personam* claim for tortious interference. (ECF No. 33.) I assume familiarity with the underlying facts as

---

[1] Raymond Goyette has since been terminated as a defendant in this action. (ECF No. 25.)

recited in that decision. Plaintiff moved for reconsideration of that ruling, arguing that the Court misapplied Connecticut law governing the Probate Court's limited jurisdiction over real property and erred in concluding that the probate exception applies to this case. (ECF Nos. 36, 37.) For the following reasons, Plaintiff's Motion for Reconsideration is DENIED.

## II. Legal Standard

A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . ." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). Instead, "the standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also* D. Conn. L. R. 7(c)(1) ("[Motions for reconsideration] will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order.").

## III. Discussion

Plaintiff first argues that the Court erred in relying on federal case law in determining that the probate exception to federal diversity jurisdiction applied to her claims for specific performance of a contract, declaratory judgment, and constructive trust. While a federal court sitting in diversity "generally applies the law of the state in which it sits" on outcome-determinative matters, *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012), it is well-settled that federal law defines the scope of the Court's diversity jurisdiction, and thus the probate exception to that jurisdiction. *See* 28 U.S.C. § 1332; *Marshall v. Marshall*, 547 U.S. 293, 298 (2006) (discussing the probate exception as a "judicially created," "longstanding limitation[] on federal jurisdiction").

Thus, the Court did not err in relying on the Supreme Court decisions in *Marshall* and *Markham v. Allen*, 326 U.S. 490 (1946), and the Second Circuit's decision in *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102 (2d Cir. 2007), all of which are binding precedent on the question before me.

Plaintiff also argues that I failed to consider Connecticut law governing the Probate Court's limited jurisdiction over real property. Plaintiff points out that Connecticut General Statutes § 45a-98 limits the jurisdiction of the Connecticut Probate Courts, and that Connecticut courts have interpreted this limited grant of jurisdiction to mean that the probate courts may not exercise jurisdiction "over a breach of contract action, whether to obtain damages or specific performance, simply because the property belongs to an estate." *Bender v. Bender*, 292 Conn. 696, 716 (2009). But this limitation on the causes of action the Probate Court may adjudicate does not negate the Probate Court's custody or control over property while administering an estate—which was the basis for my ruling.

As discussed in the Court's ruling on the motions to dismiss, the facts of this case make clear that the Probate Court did, in fact, have control over the Property at the time Mandell filed this action: at that time, the Property belonged to Ms. Goyette's estate, the Estate remained open, the executor had filed applications with the Probate Court for permission to dispose of the Property, and the Probate Court was in the process of adjudicating the disposal of the Property. *See, e.g.*, *Yien-Koo King v. Wang*, No. 14 Civ. 7694 (JFK), 2018 WL 1478044, at *8 (S.D.N.Y. Mar. 26, 2018) (finding that claims for constructive trust, replevin, and other injunctive relief fell into the probate exception because they sought to have the court exercise control over property that was part of the estate at the time of the decedent's death); *Newcomb v. Sweeney*, No. 3:11-CV-399 (VLB), 2013 WL 1774651, at *3 (D. Conn. Apr. 25, 2013) (holding that the probate exception barred the court from determining plaintiff's claim to title of an asset in the probate estate);

3

*Groman v. Cola*, No. 07 CV 2635 (RPP), 2007 WL 3340922, at *5-6 (S.D.N.Y. Nov. 7, 2007) (holding that a claim to determine the value of an asset possessed by the decedent at death but sold as an estate asset fell within the probate exception because the asset was part of the estate).

Moreover, Connecticut's limitations on the Probate Court's jurisdiction do not translate into expanded jurisdiction for the federal court. As Plaintiff notes, she was free to file this action in Connecticut Superior Court, which would have had jurisdiction over her specific performance, declaratory judgment, and constructive trust claims, and might have been willing to exercise that jurisdiction despite the potential impact on the probate proceedings. But that does not make it any more likely that those claims fall within the jurisdiction of a federal court, which, unlike the Connecticut Superior Court, is a court of limited jurisdiction. One of the limits is the probate exception to diversity jurisdiction, which, as explained in my ruling, applies whenever a particular claim would require the federal court to exercise custody or control over a *res* in the custody or control of a probate court. The state law restrictions on the Connecticut Probate Court's power to adjudicate particular claims are beside the point, as long as the property itself was under the control of the Probate Court when this action was filed.[2]

---

[2] In a 1972 decision, the Second Circuit held that "[t]he standard for determining whether federal jurisdiction may be exercised [under the probate exception] is whether under state law the dispute would be cognizable only by the probate court. If so, the parties will be relegated to that court; but where the suit merely seeks to enforce a claim *inter partes*, enforceable in a state court of general jurisdiction, federal diversity jurisdiction will be assumed." *Lamberg v. Callahan*, 455 F.2d 1213, 1216 (2d Cir. 1972). *Lamberg*'s explanation of the probate exception came decades before the Supreme Court's clarification in *Marshall*, and the Second Circuit has not relied on this formulation since *Marshall* was decided in 2006. Several district courts in this Circuit have, however, even after *Marshall*, and have turned to state law to determine whether the dispute before the federal court would be "cognizable only by the probate court." *See, e.g.*, *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 252 (S.D.N.Y. 2006). Plaintiff cites none of those cases in seeking reconsideration of the ruling on the motions to dismiss, and, in any event, those cases make clear that, to the extent the *Lamberg* formulation remains good law following *Marshall* and *Lefkowitz,* it concerns whether the federal court risks "assum[ing] general jurisdiction" over probate matters, and "does not . . . obliterate the other aspects of the probate exception" such as

Finally, Plaintiff argues that "the fact that a *lis pendens* was filed with the probate court before it ordered the sale of the property . . . was notice to the probate court that in fact it did not have control of the property." (ECF No. 37 at 6.) There are two problems with the Plaintiff's *lis pendens* argument. First, it was not raised in her original opposition to the motions to dismiss or, for that matter, in her initial motion for reconsideration, but was instead asserted for the first time in a "revised memorandum of law" in support of the motion for reconsideration that the Plaintiff filed without the Court's permission and after the deadline in the Local Rule. *See* D. Conn. L.R. 7(c). Second, and more substantively, Connecticut's *lis pendens* statute makes clear that the notice is to be filed in the land records where the property is located, not in court, and the filing of the notice, as described in the case cited by Plaintiff, gives notice to prospective buyers that "the property should not be alienated" *by the seller* while litigation is pending. *Ravitch v. Stollman Poultry Farms, Inc.*, 162 Conn. 26, 34 (1971); Conn. Gen. Stat. § 52-325(a) (providing that litigants in an action, "if the action is intended to affect real property, may cause to be recorded in the office of the town clerk of each town in which the property is situated a notice of lis pendens . . . . Such notice shall, from the time of the recording only, be notice to any person thereafter acquiring any interest in such property of the pendency of the action . . . ."). Nothing in the statute or the *Ravitch* decision cited by Plaintiff suggests that *a court*—including the Connecticut Probate Court—is prohibited from ordering the transfer of property within its control simply because

---

whether the district court is being asked to "control property in the custody of the state court." *Mercer v. Mercer*, No. CV 13-5686 (SJF) (WDW), 2014 WL 3654667, at *9 (E.D.N.Y. May 22, 2014), report and recommendations adopted in part, 2014 WL 3655657 (July 21, 2014); *see also Abercrombie*, 438 F. Supp. 2d at 252 ("[a] federal court only assumes jurisdiction of the probate where the federal district court entertains a cause of action that under state law would be cognizable only by the probate court") (alterations omitted). Because neither party has suggested that the "assuming jurisdiction" aspect of the probate exception applies here, and my ruling does not rely on that aspect of the exception, the *Lamberg* formulation does not apply to this case.

someone files another lawsuit concerning the property in another court. And nothing in either authority suggests that the Probate Court somehow lost control of the Property due to the filing in that court of a notice of *lis pendens*.

*    *    *

Because Plaintiff fails to point out controlling decisions or data that the Court overlooked, I decline to reconsider the ruling on the Motions to Dismiss.

**IV.  Conclusion**

For the reasons discussed above, the Motion for Reconsideration is DENIED.

IT IS SO ORDERED.

    /s/
Michael P. Shea, U.S.D.J.

Dated:    Hartford, Connecticut
          August 2, 2018